FILED

2008 Oct-16  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HARRIET COGAN,                      }
                                    }
        Plaintiff,                  }
                                    }        CIVIL ACTION NO.
v.                                  }        08-AR-1557-S
                                    }
ALLIANZ LIFE INSURANCE COMPANY }
OF NORTH AMERICA, et al.,           }
                                    }
        Defendants.                 }


## MEMORANDUM OPINION

Before the court is the motion of plaintiff, Harriet Cogan ("Cogan"), to remand the above-entitled case to the Circuit Court of Jefferson County, Alabama, where she filed it and from which it was removed to this court by defendants, Allianz Life Insurance Company of North America ("Allianz") and Professional Planners Marketing Group LLC ("PPMG")(hereinafter collectively referred to as "removing defendants"). For the reasons hereinafter explained, Cogan's motion will be denied.

## Background

On or about August 28, 2008, the two removing defendants removed the case and thirteen other virtually identical cases from Alabama state courts to various United States District Courts in Alabama, alleging the existence of diversity jurisdiction under 28 U.S.C. § § 1332 and 1441 (hereinafter "Allianz actions"). Eight of these cases reached the Northern District. Each of the fourteen removals presents the same atypical jurisdictional questions. The

two intertwined questions are whether Retirement Planning Corporation ("RPC"), the single non-diverse defendant that facially remains in the complaint, is still there only to frustrate removal, and/or whether RPC has any real exposure to liability. The critical allegation in the notice of removal is that there is a fraudulent joinder of RPC, the Alabama defendant.

Three judges of this court have already ruled *sua sponte* that they lack subject-matter jurisdiction over the virtually identical cases assigned to them.  The opinions that accompanied those remand orders are well written by respected colleagues. Strangely, of the fourteen removed cases, the instant one is the only case in which a plaintiff has filed a motion to remand. Counsel for each of the fourteen plaintiffs is the same. There have been no rulings on the jurisdictional question by judges other than the three aforementioned. The undersigned has taken a long time to evaluate the matter before reaching the conclusion he now reaches, which is that he has jurisdiction, a conclusion in conflict with that reached by three fellow judges. Another reason for this court's taking so long to decide the jurisdictional question is that he is reluctant to tarnish his reputation for fly-specking his own jurisdiction and, consistent with the core concept of federalism, giving the benefit of all doubt on removal to the plaintiff.

## **Relevant Procedural Facts**

On April 21, 2008, Cogan filed a state court complaint against five named defendants. She alleged that defendants (1) Allianz; (2) PPMG, Allianz's agent; (3) Robert E. Bradford ("Bradford"), Allianz's agent; (4) RPC, Allianz's agent; and (5) Senior Info Center ("SIC"), Allianz's agent, are all guilty of fraud, fraudulent suppression, negligent hiring, training and supervision, wanton hiring, failure to procure a suitable product, breach of contract, conspiracy ,and breach of fiduciary obligation, acts taken in connection with Bradford's sale of two Allianz annuities to Cogan.[1] Bradford and RPC, which is Bradford's company through which Bradford acted, served as selling agents for Allianz. In other words, Allianz was the principal, while both Bradford and RPC were its agents. RPC was, likewise, the principal through which its agent, Bradford, acted.

This and the other thirteen Allianz cases removed from state courts in Alabama arise out of the sale of equity based annuity contracts issued by Allianz. Cogan, a 79-year old Alabama citizen, claims that Allianz, acting through its four above-named agents, misled her into investing a substantial portion of her life savings into two annuities, valued at $99,073.97. In addition to actual damages, Cogan seeks punitive damages. The existence of the $75,000

---

[1]It is conceded by Cogan that "Senior Info Center" is merely a trade name under which RPC does business and not a separate legal entity.

amount in controversy necessary for creating federal jurisdiction under 28 U.S.C. § 1332 is not disputed. What is disputed is whether there was complete diversity of citizenship required by § 1332 when the removal took place.  Cogan is a citizen of Alabama. Allianz is a corporation organized under the laws of Minnesota, where its principal place of business is located. PPMG is a limited liability company organized under the laws of Florida, with its principal place of business in Florida. Bradford is a citizen of Alabama. RPC is a corporate citizen of Alabama.

On August 6, 2008, while her case was pending in state court, Cogan entered into a settlement agreement with Bradford.  In accordance with that agreement she voluntarily dismissed her action against Bradford, ostensibly "without prejudice". This dismissal came as a result of occurrences in a separate case entitled *William Clark v. Allianz, et al.*, CV-2007-900132, pending in the Circuit Court of Walker County, Alabama. On June 16, 2008, on the eve of trial in the *Clark* case, in which Bradford and RPC were defendants as in the instant case, Bradford and RPC moved for a stay, contending for the first time that Bradford should not in a civil action be forced to invoke his Fifth Amendment privilege against self-incrimination. Because there was a criminal investigation into Bradford's conduct, Bradford argued that invoking the Fifth Amendment would prejudice his defense in *Clark* and would violate his constitutional guarantee against self-incrimination. The Walker

4

County court granted the stay pending an Alabama Securities
Commission investigation. The plaintiff, Clark, filed a motion to
lift the stay, claiming that Bradford had waived his Fifth
Amendment privilege by testifying at deposition for three days. The
Walker County court agreed, but on June 23, 2008, Bradford and RPC
petitioned the Supreme Court of Alabama for an emergency stay in
order to preserve Bradford's Fifth Amendment rights. The Supreme
Court granted the petition and reinterposed the stay. This
effectively interrupted the *Clark* case and all other similar
pending cases against Allianz in state courts. On August 6, 2008,
Cogan and similarly situated plaintiffs in the other cases entered
into a comprehensive settlement agreement with the Allianz agents,
purporting to release them from liability "without prejudice". The
agreement covered all cases against Allianz pending in the state
courts, including the instant case. It was executed by Cogan,
Bradford and RPC. The agreement, an ingenious document, reads as
follows:

### AGREEMENT

This confirms the agreement reached between those parties listed on
Exhibit A, attached hereto, and hereafter called "Plaintiffs" and
Robert Bradford, Brad Bradford, Allen Springer, Valerie Starks,
("the individual Bradford defendants"), and Retirement Planning
Corporation ("RPC") (collectively, "the Bradford defendants"),
concerning a resolution of each of the cases presently pending
between them. Plaintiffs have reached this agreement because the
individual Bradford defendants intend to invoke the Fifth Amendment
in these cases, and their decision in that regard creates a
substantial risk and probability that the Plaintiffs will be unable
to pursue, or be severely delayed in pursuing, their claims against
other parties concerning their annuity investments. By executing
below, the respective law firms represent that they have full
authority to enter this Agreement as the authorized representative
of each of their clients.

The agreement is as follows:

    1. Immediately upon the execution of this Agreement, the individual Bradford defendants and William Clark[2] shall file a joint motion with the Supreme Court of Alabama to have the stay lifted for the limited purpose of the trial court considering Motions to Dismiss without prejudice of Bradford and Springer.

    2. Thereafter, the individual Bradford defendants will immediately consent to the pending Motion of Clark to dismiss them without prejudice in the <u>Clark</u> case presently pending in the Circuit Court for Walker County, Alabama.

    3. Plaintiffs will immediately move, with consent of the individual Bradford defendants, to dismiss them without prejudice in all cases in which any of those parties is a named defendant, including, but not limited to, each case listed on Exhibit A.

    4. Robert Bradford and RPC will jointly, with William Clark, immediately upon the granting of Motions to Dismiss the individual Bradford defendants without prejudice in the <u>Clark</u> case, file a joint motion to dismiss the pending Petition for Writ of Mandamus in the Supreme Court of Alabama. All motions within that case will be deemed moot, and the joint motion shall so state.

    5. Plaintiffs agree not to join any of the individual Bradford defendants as defendants in their pending cases, including any of the cases listed in Exhibit A, and will not sue them in any different cases, so long as the Bradford defendants comply with the other terms of this Agreement.

    6. Plaintiffs agree to cooperate with the individual Bradford Defendants in scheduling depositions so as to minimize time commitments.

    7. Plaintiffs agree to assist the individual Bradford Defendants in opposing any effort by any other party to oppose the Motions to Dismiss or to otherwise join and add them as parties, and should such occur despite this opposition, agree to cooperate in seeking a separate trial or severance of such claims from plaintiffs' claims.

    8. Plaintiffs agree that, notwithstanding anything to the contrary herein, they will not attempt to add the individual Bradford Defendants in their pending cases or sue them in any different cases if the Plaintiff in

---

[2] William Clark is the plaintiff in *Clark v. Allianz, et al.* noted in the discussion, *supra.*

question first either gets to try his or her case to a verdict, or settles with any other party.

9. Plaintiffs agree that if at any time they add back as parties any individual Bradford Defendants, the addition at that time will deemed a new suit and not relate back for purposes of statute of limitations.

10. Provided that the Motions to Dismiss contemplated in this Agreement are granted, as to the case in question, none of the Bradford Defendants will ever take any action or seek to delay any case of the Plaintiffs on the basis that any of the individual Bradford Defendants must take the Fifth Amendment in that case, or that a stay of that case is warranted on that basis, whether on appeal or otherwise.

11. RPC agrees not to voluntarily file a bankruptcy or dissolve. If RPC does voluntarily file bankruptcy or seek dissolution, that action would constitute a breach of this agreement by RPC and by each of the individual Bradford defendants.

12. Plaintiffs agree not to seek recovery from any of the individual Bradford Defendants through a piercing of the corporate veil of RPC, or otherwise for any judgment obtained in a case while the individual Bradford Defendants are not parties.

13. To the extent allowed by the applicable rules of professional responsibility, Plaintiffs and their attorneys agree to refrain from initiating, or causing to be initiated, any new claims or investigations against the individual Bradford defendants, whether by any of the parties listed on Exhibit A, or any other individual, corporation, group or governmental agency so long as the Bradford defendants are not in breach hereof.

14. Plaintiffs further agree that, should they obtain a judgment against RPC, whether by default or otherwise, they will not mention any of the individual Bradford defendants or Senior Info Center by name in connection with any news coverage or subsequent discussions of that judgment. Plaintiffs acknowledge that Senior Info Center is a trade name and not a separate legal entity. Further, Plaintiffs agree that Senior Info Center will not be referenced in any judgment which they might obtain against RPC.

15. The Bradford Defendants enter into this Agreement after consultation with their attorneys.

16. Plaintiffs acknowledge and agree that Senior Info Center is not a separate or freestanding corporate entity, but rather is a d/b/a of RPC, and will so notify the Court.

17. This agreement may be executed in counterparts and through facsimile signatures.

This agreement had a purpose other than to prevent removability by the device of seeming to keep alive a claim against RPC, the only non-diverse defendant, but its predominant purpose was to prevent the creation of any right by Allianz and PPMG to remove to federal court. This court finds that Cogan was and is not serious in her pursuit of RPC. Her real purpose was to destroy diversity or maintain non-removability. The fact that RPC did not file a motion to dismiss in the state court immediately after Cogan's dismissal of Bradford speaks loudly of the existence of some sort of gentlemen's agreement beyond what the parties put in writing. Also, the written agreement glaringly does **not** contain an express reservation of any right by Cogan to pursue RPC, despite the ostentatious dismissal of its agent, Bradford. Was this a scrivener's error, or is it the manifestation of a tacit agreement that Cogan and the other plaintiffs have forgiven RPC? If what this court is about to hold is correct, RPC should file motions to dismiss all Allianz cases pending in state courts, and such motions should be granted by the state courts, that is, unless the state courts disagree with this court's understanding of the applicable law of Alabama, as this court hereinafter articulates it.

The fact that only one of the fourteen plaintiffs in the removed cases has filed a motion to remand speaks more loudly than words. This court construes this fact as an implied admission by

the plaintiffs that the federal courts to which the defendants have removed the cases have jurisdiction under § 1332. Federal courts cannot obtain subject-matter jurisdiction by accident or by concession of the parties. In order for a federal court to have removal jurisdiction under § 1332, the action must be treated as dismissed against all non-diverse defendants. The federal judges who have not *sua sponte* remanded their Allianz cases, if they continue to proceed with the cases as they are now proceeding, will necessarily be in agreement with this court that RPC has effectively been eliminated as a defendant.

Another bizarre, but relevant, fact is that in six of the removed cases, RPC, the non-diverse defendant over which the federal courts could not have jurisdiction under § 1332, has filed an answer, and in two of the cases the courts have entered orders requiring Rule 26 (f) parties planning meetings. RPC is acting as if it can confer jurisdiction on the federal court by not challenging § 1332 jurisdiction.

It is undisputed that if Cogan had obtained an order of dismissal containing the words "with prejudice", she would have forever abandoned her claim both against Bradford and against Bradford's principal, RPC, an entity that she sues only vicariously under a theory of *respondeat superior*. Any non-tort claims she asserts against Bradford and RPC are illusory on their face. The law of Alabama clearly is that the dismissal "with prejudice" of a

claim against an agent constitutes a release of the principal if the claim against the principal is based on *respondeat superior*. *Hundley v. J.F. Spann Timber, Inc.*, 962 So. 2d 187, 192 (Ala. 2007).

Cogan's counsel were fully aware that a voluntary dismissal of the action "with prejudice" against Bradford would constitute a discontinuance of the action against RPC and would automatically create the complete diversity necessary for a § 1332 removal. They consciously created the appearance of continuing to pursue Cogan's claim against RPC by employing the words "without prejudice". This court will look through form to substance.

Following the execution of the settlement agreement, Cogan sought from the state court and obtained the contemplated dismissal "without prejudice" against Bradford. This court finds, however, that this dismissal constituted a *de facto* dismissal "**with prejudice**", or the functional equivalent of a dismissal "with prejudice", triggering a discontinuance of the action as against RPC, the principal.

## Analysis

There are three reasons why this court reaches its conclusion that, in truth and fact, the purported dismissal of Bradford "without prejudice" was a thinly disguised but effective dismissal "with prejudice".

**Reason One**

In the settlement agreement Cogan expressly promised not to sue Bradford so long as the "Bradford defendants comply with the other terms of this Agreement". This language is as airtight a release of Bradford as could be written without actually employing the words "with prejudice". Although the words "with prejudice" have a certain magic, "the effect of a dismissal order is determined by its substance, and not by the incantation of any particular magic words . . . ." *Schal Bovis, Inc. v. Cas. Ins. Co.*, 732 N.E.2d 1082, 1087 (Ill. App. Ct. 1999). And, in *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 602, 603 (5th Cir. 1976), the Fifth Circuit, in a decision binding on this court, held that when conditions exist that make the further pursuit of a defendant impossible as a practical matter, the words "without prejudice" mean "with prejudice". The Fifth Circuit did not say that a duckbilled platypus has some of the features of a duck, but is not a duck. Admittedly, the platypus has a bill and webbed feet. But, it doesn't waddle, and it doesn't quack. The instant dismissal "without prejudice" waddles and quacks.  It is, in reality, a duck.

Unnecessary to this analysis, but another proof that Cogan has no intention of pursuing either Bradford or his wholly owned corporation, RPC, is the provision in the agreement that RPC will not bankrupt while Cogan will not attempt to pierce the corporate veil in order to go after Bradford. When RPC predictably is without

assets having distributed whatever it has to its sole owner, why would bankruptcy be a consideration? All of RPC's creditors have contractually committed never to pursue its assets. The only way to get blood out of a turnip is to insert a syringe into the arm of the turnip's owner. No such syringe is in Bradford's future.

### Reason Two

If there remains a theoretical possibility that Cogan can again sue Bradford in the event one of the Bradford defendants should brashly or inadvertently breach the agreement, something totally unanticipated and precluded as a practical matter, the statute of limitations acts as an effective bar to the pursuit of a claim against Bradford, and thus absolutely converts the words "without prejudice" into the words "with prejudice". The statute of limitations for fraud in Alabama is two years. Ala. Code § 6-2-38(1). This alleged fraud occurred in April of 2006, more than two years prior to the illusory dismissal "without prejudice". In an opinion binding on this court, the Fifth Circuit held that the dismissal "without prejudice" of an action barred by the statute of limitations is tantamount to a dismissal "with prejudice". *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 213 (5th Cir. 1976). Cogan has made no argument for a tolling of the two year statute of limitations, and the settlement agreement expressly recognizes a statute of limitations defense by providing that any addition of a Bradford defendant to existing cases "will be deemed a new suit and

not relate back **for purposes of statute of limitations**". (emphasis supplied). There would have been no purpose for inserting this language in the agreement except to recognize that the dismissed claim against Bradford, if brought up again, will be barred by the statute of limitations. Just as significant as the express reference to the statute of limitations is the conspicuous absence in the agreement of a **waiver** by Bradford of his statute of limitations defense. If Cogan had been serious about preserving a right to sue Bradford, her counsel would have insisted upon a formal waiver of statute of limitations defenses. The only facially viable claims against Bradford are now barred by the statute of limitations, rendering lame the words "without prejudice".

### Reason Three

The settlement agreement, whether deliberately or inadvertently, contains no **express reservation** by Cogan of the right to maintain an action against RPC, the principal, whose agent, Bradford, has been effectively released. The law of Alabama recognizes only one way to preserve a right to proceed against a principal after the release, or dismissal with prejudice, of the same claim against the agent.  That method is to **expressly reserve** such a right in writing. *Alfa Life Ins. Corp. v. Jackson*, 906 So. 2d 153, 155 (Ala. 2005). The mere fact that this settlement agreement provides that RPC will not file voluntary bankruptcy does not substitute for the strict Alabama requirement that there be an

13

explicit reservation of a right to proceed against the principal in order to preserve that right.

### The Bottom Line

This court fully agrees with the proposition that there must be a colorable claim stated against a non-diverse defendant before a classic fraudulent joinder can exist. This court finds, however, that there was a fraudulent joinder here not only because no viable claim any longer exists against RPC, but because the settlement agreement and the dismissal "without prejudice" were contrivances designed to avoid removal jurisdiction. The agreement, insofar as it purports to preserve a claim against RPC, is a charade. The court is further satisfied that, under Alabama law, there is no longer a viable claim against RPC. Therefore, defendants have met their burden of proving subject-matter jurisdiction. RPC can safely be ignored by this court.

The only explanation this court can offer for Allianz's not having removed the *Clark* case from the Walker County court to the Northern District is the possible intimidating effect of staccato *sua sponte* remand orders entered by other Northern District judges, together with the very real possibility that sizable costs would be taxed against a removing defendant if an improvident removal should be found.

If this court harbored serious doubt about reaching a conclusion that is diametrically opposed to the conclusion reached

by three of its respected colleagues, it would find itself unhappy with the inability to certify the same dispositive jurisdictional questions to the Supreme Court of Alabama, the final arbiter of Alabama law. To certify these questions would be contrary to the holding of the Eleventh Circuit that certification is inappropriate in the context of a motion to remand. *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). In order to certify a question to a state appellate court, the certifying federal court must first have jurisdiction. *Id. at* 1540-41; See also *Panell v. Am. Home Prods. Corp.*, 106 F. Supp. 2d 1240, 1242 (N.D. Ala. 2000). This court has comfortably found that it has jurisdiction, making academic the certification conundrum.

### Conclusion

For the foregoing reasons, Cogan's motion to remand will be denied by separate order, but with a 28 U.S.C. § 1292(b) certification.

DONE this 16th day of October, 2008.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

15